# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| AA ADVANCED AUTOMATION, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CASE NO. 6:06-CV-417 |
| | § | |
| JOHN ANDERSON and | § | |
| LAGUNA INTERNET | § | |
| TECHNOLOGIES, INC., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER ON MOTION FOR MORE DEFINITE STATEMENT AND ALTERNATIVE MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR IMPROPER VENUE

Pending before the Court is the Defendants' Special Appearance, Motion for More Definite Statements Under FED. R. CIV. P. 12(e) and Alternative Motion to Dismiss for Lack of Personal Jurisdiction Under FED. R. CIV. P. 12(b)(2) and for Improper Venue under FED. R. CIV. P. 12(b)(3) (Doc. No. 9). Having considered the motion, response, and applicable law, the Court finds that the motion should be denied.

## I. BACKGROUND

Plaintiff AA Advanced Automation, Inc. ("Advanced Automation"), a Texas corporation, provides consulting, training, education, and support services to insurance agencies. In conjunction with these services, Advanced Automation sells insurance agencies Internet computer software titled "Customer Account Representative OnLine," or

"C.A.R.O.L." The C.A.R.O.L. software provides a customized way for insurance agents and their customers to access insurance policies on the Internet 24 hours a day, request quotes or certificates, submit changes or claims, ask questions, make payments, or check the status of previously submitted transactions.

In its complaint, Advanced Automation alleges that Defendants John Anderson ("Anderson") and Laguna Internet Technologies, Inc. ("Laguna") have a written or oral contract with Advanced Automation to create and host insurance agency web sites, host agency e-mail systems, and provide Advanced Automation customers with technical support for the C.A.R.O.L. system.  It is undisputed that Anderson and Laguna are Florida residents and that Laguna's principal place of business is Florida.

Advanced Automation alleges that, in the year preceding the filing of its complaint, Defendants Anderson and Laguna have breached the parties' contract by unilaterally restricting access by Advanced Automation and the various insurance agencies or their customers to agency web-sites, thereby preventing full use of the C.A.R.O.L. system. Advanced Automation further alleges that Anderson and Laguna have failed to provide back-up information to the insurance agencies and Advanced Automation, and have failed to timely respond to questions, inquiries, or requests for assistance from the insurance agencies or Advanced Automation as required by the parties' agreement.  Advanced Automation also alleges that Anderson has defamed Advanced Automation by contacting certain insurance agencies and disparaging Advanced Automation and its employees.  Advanced Automation

further alleges that, in written or oral communications to third parties, Anderson has referred to Advanced Automation and its President, Ted Baker, as "stealing" proprietary information from Laguna or Anderson, or "cheating" Anderson out of money.  Advanced Automation further alleges that it is the rightful owner of the C.A.R.O.L. system and that Anderson has slandered Advanced Automation's title and ownership interest in the C.A.R.O.L. system and the underlying programming language by means of written or oral communications to third parties.  Advanced Automation also alleges that, by virtue of Anderson's slander of title and defamatory remarks, Anderson has tortiously interfered with Plaintiff's existing and business contracts.  Advanced Automation finally alleges that it should be allowed to recover damages under the doctrine of quantum meruit and seeks a declaratory judgment as to the ownership of C.A.R.O.L. and the underlying programming language.

Defendants Anderson and Laguna argue in their motion that Defendants are entitled to an order requiring Plaintiff to file an amended complaint that is not vague and ambiguous. They further argue that Plaintiff has failed to allege sufficient, non-ambiguous facts to demonstrate a factual basis for this Court's exercise of personal jurisdiction over the Defendants.  Defendants also argue that this case should be dismissed because the Eastern District of Texas is an improper venue.

## II.  MOTION FOR MORE DEFINITE STATEMENT

Rule 12(e) of the Federal Rules of Civil procedure provides that, if a plaintiff files a complaint that is so vague or ambiguous that the defendant cannot file a responsive pleading,

the defendant may ask the Court to require the plaintiff amend its complaint with a more definitive statement.  FED. R. CIV. P. 12(e).  Rule 12 further provides that "[t]he motion shall point out the defects complained of and the details desired."  *Id.*  Generally, however, a pleading must simply give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a).  Here, Defendants merely state in a single paragraph that the Plaintiff's complaint is defective and that Defendants are unable to file an appropriate response.  After reviewing the Plaintiff's complaint, however, the Court concludes that the complaint gives the Defendants fair notice of the Plaintiff's claims against them and the grounds upon which those claims rest.  The Defendants' motion for a more definite statement is denied.

## III.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  Legal Standard

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must present sufficient facts to make out a prima facie case for the exercise of jurisdiction over a nonresident defendant.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  A court must accept as true all non-conclusory, uncontroverted allegations in the plaintiff's complaint, and it must resolve all factual conflicts in favor of jurisdiction. *See id.*; *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

Whether the court has personal jurisdiction over a defendant depends on whether personal jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the U.S. Constitution. *Alpine View*, 205 F.3d at 214. The Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. *Id*; *Central Freight Lines*, 322 F.3d at 380. Therefore, the Court must consider whether exercising jurisdiction over the Defendants is consistent with due process. *See Alpine View*, 205 F.3d at 214.

Exercising personal jurisdiction over a non-resident defendant is consistent with due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Central Freight Lines*, 322 F.3d at 380 (quoting *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999)). To find that a defendant has sufficient minimum contacts with the forum state, a plaintiff must establish that the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's activities in the subject forum "must justify a conclusion that the defendant should reasonably anticipate being called into court there." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A defendant's contacts with a forum may either be general or specific. *Central Freight Lines*, 322 F.3d at 381. Specific jurisdiction arises when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A court may assert general jurisdiction over a non-resident defendant when that defendant's contacts with the forum state are "substantial and 'continuous and systematic' but unrelated to the instant cause of action." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Once a plaintiff meets its burden to establish minimum contacts between a defendant and the forum state, the burden shifts to the defendant challenging jurisdiction to make a "compelling case" that "the assertion of jurisdiction is unfair and unreasonable." *Id*. at 384. In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. *Id*. (citing *Burger King*, 471 U.S. at 477; *Asahi Metal Indus. Co. Ltd. v. Superior Court of California*, 480 U.S. 102, 115 (1987)).

## B. Specific Jurisdiction

In this case, the Court finds that the exercise of specific personal jurisdiction over the Defendants is appropriate because one or more of the Plaintiff's causes of action arises out of or is related to the Defendants' purposeful contacts with Texas and this district.  Plaintiff Advanced Automation is a Texas corporation who operates out of this district.  Advanced Automation alleges that Defendants have a long-standing business arrangement with Defendants and have incurred continuing obligations to Plaintiff and several insurance agencies operating the C.A.R.O.L. system within Texas and this district.  Plaintiff alleges that the Defendants have been paid "hundreds of thousands of dollars" in exchange for performing these services, and  in consideration for future services.  Advanced Automation further contends that Defendant Anderson, as president of Laguna, frequently communicates with Advanced Automation employees in this district via telephone and email regarding the parties' business activities.  Finally, Advanced Automation states that Anderson's conduct and statements made during a July 2006 visit to this district serves as a substantial basis for the Plaintiff's causes of action for declaratory judgment, defamation, and slander of title. Defendants do not dispute these facts, but argue only that all of the services that form the basis of the parties' business relationship were performed from Florida, and that all payment for such services was billed from Florida and received in Florida.  Defendants also argue that Anderson did not libel Advanced Automation at all, and certainly not in Texas.

In light of the undisputed facts and those disputed facts which must be resolved in favor of the Plaintiff, it is apparent that the Defendants have purposefully directed their activities at residents in this forum, and that the litigation results from alleged injuries that "arise out of or relate to" those activities. *See Burger King*, 471 U.S. at 472.  Indeed, the Supreme Court has noted that, "with respect to interstate contractual obligations, . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).  Furthermore, "where the defendant 'deliberately' . . . has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and . . . it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." *Id.* at 475–76 (citations omitted).  Here, Defendants are alleged to have created continuing obligations with residents of this forum and, as such, they are subject to personal jurisdiction for conduct that arises from or relates to those continuing obligations. *See id.*  Moreover, Defendants are alleged to have actually committed acts giving rise to several of the Plaintiff's claims while physically present in this district.  Accordingly, the Court finds that the Defendants have sufficient minimum contacts with this district to justify the exercise of this Court's jurisdiction over them.

## C.  General Jurisdiction

Because the Court has found that the Defendants have sufficient specific minimum contacts with this district to satisfy due process, the Court declines to consider whether the Defendants' general contacts also give rise to personal jurisdiction.

## D.  Traditional Notions of Fair Play and Substantial Justice

In this case, because the Plaintiff has established purposeful contact with this district by the Defendants, the burden of proving that the exercise of jurisdiction over the Defendants is unfair rests with the Defendants.  *Burger King*, 471 U.S. at 477.   "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (emphasis added).  Nevertheless, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478 (citations omitted).

Here, the Defendants argue that the burden of defending this case in Texas is substantial because the Defendants are citizens of the State of Florida and because it would impose an undue hardship on the Defendants to attend depositions, pre-trial hearings and trial in the State of Texas.[1]  By contrast, argue Defendants, Plaintiff is a large company that

---

[1] In support of their contention that appearing for trial in this district offends traditional notions of fair play and substantial justice, Defendants cite *NCNB Texas National Bank v. Anderson*, 812 S.W.2d 441 (Tex. App.—San Antonio, 1991, no writ.).  In *Texas National*, the San Antonio court of appeals held that the exercise of a Texas court's jurisdiction over a

apparently does extensive work throughout the United States.  The Court finds, however, that the Defendants' stated reasons do not constitute a compelling case as to why the exercise of this court's jurisdiction over them is unreasonable. Indeed, when considering the other factors identified by *Burger King* and *Central Freight Lines*, including the interests of the forum state in the case, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in the most efficient resolution of controversies, this court's exercise of jurisdiction over the Defendants is reasonable.  *See Burger King*, 471 U.S. at 477; *Central Freight Lines*, 322 F.3d at 384.  Accordingly, the Court finds that the exercise of this Court's jurisdiction over the persons of the Defendants is in accordance with due process; that the Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## IV. MOTION TO DISMISS FOR IMPROPER VENUE

### A. Legal Standard

If a plaintiff commences an action in the wrong district or division, a federal court must, upon timely motion, dismiss the action for improper venue, or if it be in the interest of

---

defendant who had entered into a partnership agreement to form a Texas limited partnership to operate, lease and invest real property in Houston offended traditional notions of fair play and substantial justice because the defendant did not reside in Texas, did not have employees or servants in Texas, all contract negotiations had occurred in California, and the non-resident did not travel to Texas in connection with the transaction and did not own property or tangible assets in Texas.  *Id*. at 444–46.  In this case, however, the Defendants have much closer ties to Texas. Defendant communicates regularly with Texas residents regarding the services and agreements at issue, and Defendant Anderson has traveled to this district several times in connection with his continuing obligations to residents of Texas.

justice, transfer the case to any district or division where it could have been brought.  28

U.S.C. § 1406(a).   Generally, the burden is on the plaintiff to establish that the district he

chose is a proper venue.  *See* 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND

PROCEDURE § 3826 (2d. ed. 1986); *Youman v. Newfield Exploration Co.*, 977 F. Supp. 809,

810 (E.D. Tex. 1997); *Langton v. Cbeyond Communication, L.L.C.*, 282 F. Supp. 2d 504, 508

(E.D. Tex. 2003); *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D.

Tex. 2001).   When assessing venue, the court should accept uncontroverted facts in the

complaint as true and resolve conflicts in the evidence in the plaintiff's favor.  *McCaskey*,

133 F. Supp. 2d at 523.

> Where jurisdiction is based on diversity of the parties, venue is only proper in
>
> (1) a judicial district where any defendant resides, if all defendants reside in
> the same State, (2) a judicial district in which a substantial part of the events
> or omissions giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (3) a judicial district in which any
> defendant is subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(a).  The Plaintiff argues that venue is proper in this district because it is

where a substantial part of the events giving rise to the claim occurred.  Specifically, Plaintiff

argues that Anderson, on behalf of Laguna, recently traveled to Tyler, Texas in an attempt

to resolve business differences, discuss ownership of the C.A.R.O.L. system and

programming language, and try to form a new working agreement between Laguna and

Advanced Automation.  Plaintiffs allege that this meeting failed to produce an agreement,

which substantially contributed to the decision to file this lawsuit.  Plaintiffs further allege that, during the Tyler, Texas meeting, Anderson accused Advanced Automation of "stealing" proprietary information and asserted Laguna's ownership of the C.A.R.O.L. system programming language.  Plaintiff argues that these alleged events give rise to the claims for breach of contract, declaratory judgment, defamation, and slander of title.

Taking the above allegations as true, the Court finds that venue in this district is proper under 28 U.S.C. § 1391(a)(2).  The Defendants' motion to dismiss for improper venue is denied.

## V.  CONCLUSION

For the above stated reasons, the Court finds that the Defendants' Motions to Dismiss should be, and hereby are, **DENIED**.

**It is SO ORDERED.**

**SIGNED this 9th day of April, 2007.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE